**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO. 24-cr-346** |
| | : | |
| **v.** | : | |
| | : | **VIOLATIONS:** |
| **GABRIEL ROBIN,** | : | |
| | : | **40 U.S.C. § 5104(e)(2)(D)** |
| **Defendant.** | : | **(Disorderly Conduct in** |
| | : | **a Capitol Building)** |
| | : | |
| | : | **40 U.S.C. § 5104(e)(2)(G)** |
| | : | **(Parading, Demonstrating, or Picketing in** |
| | : | **a Capitol Building)** |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Gabriel Robin, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP

attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

***The Defendant's Participation in the January 6, 2021, Capitol Riot***

8. On January 5, 2021, Gabriel Robin traveled from Louisiana to Washington D.C. to attend the former president's rally. After attending the rally, Robin traveled with the crowd to the United States Capitol. (*Image 1*)



*Image 1: Robin traveling to the Capitol following the former president's rally.*

9. At approximately 2:30 p.m., Robin arrived on the Capitol's West Front. At this location, Robin observed the developing riot, including violence by rioters against police officers. (*Image 2*) Although he was not directly sprayed by police officers, Robin felt the overwhelming effects of chemical irritants in the air that police officer deployed to quell the riot.



*Image 2: Robin on the West Front where he observed the actions of other rioters.*

10. From there, Robin made his way to the Upper West Terrace. Once on the Upper West Terrace, Robin traveled to the Upper West Terrace Door at the center of the Capitol. Robin

entered the Capitol through this entryway at approximately 2:45 p.m., nearly 1 minute before officers physically prevented rioters from entering the Capitol at this location. *(Image 3)* Contrary to Robin's statement to the FBI on May 24, 2024, that U.S. Capitol Police held this door open for Robin and other rioters and thereby permitted their entry into the Capitol, no authorized person, including police officers, held these doors open nor permitted Robin to enter the Capitol by any other means. Robin acknowledges that this statement to the FBI was false.




*Image 3: Robin entering the Capitol.*

11. After Robin entered the Capitol through the Upper West Terrace Door, Robin walked through a hallway and up a set of stairs leading to the Capitol Rotunda at approximately 2:46 p.m. Once Robin reached the Rotunda, he remained in the Rotunda for several minutes carrying a megaphone and cell phone recording and taking photos of the scene around him. (*Image 4*)



*Image 4: Robin in the Capitol Rotunda holding a megaphone.*

12. At approximately 2:47 p.m., Robin entered the East Foyer. He briefly traveled back to the Rotunda on two instances after entering the East Foyer, each time returning to the East Foyer. Additionally, while in the East Foyer, Robin smoked a substance. (*Image 5*)



*Image 5: Robin smoking in the East Foyer.*

13. Shortly thereafter, at approximately 2:53 p.m., Robin departed the Capitol through the East Doors. However, Robin remained on Capitol grounds, and, in total, spent over two hours on Capitol grounds during the riot on January 6, 2021.

***Elements of the Offense***

14. The parties agree that 40 USC § **5104(e)(2)(D)** requires the following elements:

a. The defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds.

b. The defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

c. The defendant acted willfully and knowingly.

15. The parties agree that **§ 5104(e)(2)(G)** requires the following elements:

a. The defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

b. The defendant acted willfully and knowingly.

***Defendant's Acknowledgments***

16. The defendant, Gabriel Robin, knowingly and voluntarily admits to all the elements as set forth above. Specifically, Robin admits that his conduct of entering restricted Capitol grounds during an ongoing riot, entering the Capitol, and smoking in the Capitol was disorderly and disruptive and completed to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress. Additionally, Robin acknowledges that he knowingly paraded, demonstrated, or picketed inside the Capitol after he entered the Capitol and remained inside the Capitol with other rioters.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

/s/ *Eli Ross*
by: Eli Ross

Assistant United States Attorney
Illinois Bar Number 6321411
United States Attorney's Office
601 D. Street, N.W.
Washington, D.C. 20001
Telephone: (202) 297-1515
Email: Eli.Ross@usdoj.gov

**DEFENDANT'S ACKNOWLEDGMENT**

I, Gabriel Robin, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 7/25/24

Gabriel Robin
Defendant

**ATTORNEY'S ACKNOWLEDGMENT**

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 7/25/24

Warner Thompson
Attorney for Defendant